

**U.S. Department of Justice**

United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C.  20001*

June 28, 2006

**By Hand Delivery In Court**

Defense Counsel

           Re:    United States v. Vincent Tillman
                   Case No. 06-172 (EGS)

Dear Counsel:

I am writing to provide you with certain information in response to your request for discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure.

**I.    Charges**

Your client is currently charged with the following offenses: (1) Unlawful Possession of a Firearm and Ammunition By a Person Previously Convicted of an Offense Punishable By Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); (2) Unlawful Possession with Intent to Distribute 100 Grams or More of Heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(I); and (3) Using, Carrying and Possessing A Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c)(1) . If your client is interested in discussing the possibility of entering into a plea agreement in this case please contact the undersigned AUSA.

**II.   Discovery**

      **A.    Documents**

Copies of the following documents are enclosed with this letter:

- PD-163
- Gerstein
- DEA Laboratory Report and DEA-7
- PD-95 (Drugs)
- PD-81 (Drugs)
- PD-95 (US Currency)

- PD-81 (x3) (non-drug evidence)
- PD-14 (x2)
- Certificate of Firearm Examination
- Certificate of No Record of Firearms Registration
- Certificate of No Record of a License to Carry a Pistol
- Crime Scene Examination Section Evidence Report
- Indictment
- Color copies of crime scene photographs (14)
- Photocopy of Defendant's Driver's License and Vehicle Registration

**B.   Evidence**

**1.   Physical Evidence**

At trial the government may seek to introduce the physical evidence that is described on the attached police reports and those items listed below. This evidence includes:

- Gun and ammunition
- drugs and packaging as indicated in the attached paperwork and completed laboratory analysis
- Photographs of the scene, evidence and your client
- Diagrams or maps of the location where the incident occurred

**2.   Radio Run Information**

_____   The government believes there are no recorded communications relevant to this case.

\_\_\_X\_\_\_   The government believes that there may be recorded communications relevant to this case. The recording will be provided consistent with the government's obligations under the <u>Jencks</u> Act. Should we determine that we may use the recorded communications as evidence at trial, we will provide you a copy of the tape after we receive it.

**3.   Identification Evidence**

The government is not aware of any identification procedure used in this case.

**4.   Inspection**

Upon request, you are entitled to inspect and copy or photograph certain books, papers, documents, photographs, tangible objects, buildings or places that are within the possession, custody or control of the government. *See* Fed R. Crim. P. 16(a)(1)(E). If you would like to view any of the evidence listed above or described on the attached police reports, please contact me immediately and we can make arrangements for you, or your certified investigator, to inspect the evidence. These

arrangements will include a condition that you not raise any objection to the admissibility of such evidence at trial because of the break in the chain-of-custody occasioned by your inspection.

### 5.     Reports of Examinations or Tests and Experts

Attached to this letter are the DEA analysis of the narcotics seized in this case and the firearms test fire certificate. Also attached to this letter is the Crime Scene Examination Section Evidence Report. It is my understanding that the fingerprints obtained in this case are of no value. If you are unwilling to stipulate to the results of the DEA analysis please let me know **as soon as possible (in writing) so that there will be no delay of the trial**, otherwise I will then have to make arrangements for the chemist to testify.

The government intends to call a narcotics expert at trial. That expert may be Detective Anthony Washington or Sgt. John Brennan. Because of the large volume of narcotics cases set for trial, the lack of certainty that a case scheduled for trial will actual proceed to trial, and because of the fact that the Metropolitan Police Department narcotics experts are on call for many different courtrooms at the same time, the government cannot determine at this time the identity of the expert.

The expert may testify -- by providing information or by rendering an opinion -- concerning the following:

(a) the procedures used by the Metropolitan Police Department for handling narcotics evidence and for safeguarding the chain of custody and integrity of the evidence in narcotics cases.

(b) the quantitative and qualitative analysis of the narcotics evidence by the DEA and the strength of the substance.

(c) the methods of using and purchasing narcotics in the District of Columbia, including but not limited to: the reasons for such methods; the cost (price) of narcotics, both wholesale and retail; the common dosage of, usable and measurable amounts, and strength of narcotics; packaging materials, cutting agents, scales, and paraphernalia for using drugs; the use of stashes, and methods used to avoid detection of narcotics.

(d) the methods for processing, packaging, selling, transferring and trafficking narcotics in the District of Columbia, including but not limited to the roles of different participants in drug trafficking schemes.

(e) that beepers, pagers, cellular phones, automobiles, stashes, stash houses, safe houses, crack houses, weapons, open air drug markets, couriers, ledgers, safes, and false identities are commonly used in the sale, transfer, processing and trafficking of narcotics in the District of Columbia and elsewhere.

(f) that possession of narcotics for use can be distinguished from possession of narcotics with intent to distribute, and that, for a variety of reasons, possession of numerous individually packaged narcotics, or possession of fewer packages but accompanied by other indicia of sale, is generally more consistent with an intent to distribute than with mere possession for personal use.

The expert will base his/her opinions on the foregoing on his/her years of training and experience in the area of drug investigations.

The qualifications of the expert witnesses, Detectives Washington and Sgt. Brennan include, but are not limited to, the following:

- Detective Washington has been a police officer for more than 17 years. In September 1988 Detective Washington was assigned to the Fourth District vice unit as a narcotics investigator. In March 1990 Washington was assigned to the Narcotic Special Investigation Division as a narcotics detective. In November 1992 Washington was detailed to the United States Department of Justice, Drug Enforcement Administration as a Task Force Officer, where he remained until January 7, 2000. Detective Washington has served as a Superior Court Resident Narcotics Expert since January 7, 2000, and has testified many times.

- Sgt. Brennan has been qualified to testify as an expert in Superior Court of the District of Columbia, and in U.S. District Court on numerous occasions. I am unable to provide you with a resume for Sgt. Brennan. However, you may contact him at (202) 439-1573. Sgt. Brennan will be more than willing to discuss his credentials with you.

Apart from their broad and varied work experiences, Detective Washington and Sgt. Brennan have been trained at the Police Academy and have received ongoing education and training by various local and federal law enforcement agencies (including MPD, FBI, DEA, DOJ, and ATF) in areas including, but not limited to: narcotics surveillance; manufacture of narcotics; the use, sale, packaging, and distribution of narcotics in the District of Columbia; drug identification; weights and measures of narcotics; surveillance techniques; constitutional law issues involved in the search and seizure of criminal suspects and their belongings; conduct and operation of the Mid-Atlantic DEA Laboratory; chain of custody procedures; the safeguarding of narcotics evidence; investigative techniques; the relationship between firearms and drug trafficking; and the execution of observations posts and undercover operations. In addition, Detective Washington and Sgt. Brennan have trained and instructed others, including police recruits and experienced officers, as well as members of the defense bar in the District of Columbia, in many of the areas listed above.

Detective Washington and Sgt. Brennan are familiar with the packaging, use, distribution, cost, and availability of narcotic substances. They have also kept abreast of developments in the narcotics trade by way of ongoing formal and informal education. With respect to the latter,

Detectives Washington and Sgt. Brennan have participated in actual surveillance and arrests, which have involved contact with the participants of narcotics trafficking, including informants, cooperating witnesses, and "special employees."

In addition, please be advised that the government may call a fingerprint expert to testify at trial. The expert may testify about the following subjects: the taking of fingerprints; how fingerprints are left; how fingerprints are lifted; the factors that affect the taking of fingerprints; the difficulties in recovering prints from surfaces such as plastic or guns; the comparison of prints; and the identification of prints if there are sufficient "points" to render a print usable. Due to the volume of cases being presented in both the District and Superior Courts, it is unclear which witness will be available to testify if needed. The government may call George L. Anderson, III, as an expert. His qualifications include: 33 years as a fingerprint examiner (25 years at the FBI and 8 years at the MPD); a degree in criminology from American University; one year of FBI fingerprint school; FBI fingerprint seminars; and hundreds of thousands of fingerprint analyses. The government might also call Willie Higganbotham, Mary Jones, Charles Sanders, or another fingerprint specialist as its expert. The government believes these individuals have qualifications similar to those of Mr. Anderson. The government may also call an experienced Mobile Crime or Crime Scene Search evidence technician as an expert. This expert will testify about the methods used to recover or attempt to recover latent fingerprints from pieces of evidence, why recovering latent fingerprints from particular surfaces or items of evidence may be difficult, and the MPD (or other law enforcement) policies, practices, and procedures for recovering and processing latent fingerprints. Such an expert will base his or her testimony on their training and experience in evidence collection.

### C. RULE 404(b) EVIDENCE (known at this time)

The government may seek to admit evidence of the defendant's prior convictions pursuant to FRE 404(b). In the event that the government seeks to introduce such evidence at trial an appropriate notice will be filed.

### D. Defendant's Rule 16 Statements

Please see the attached police paper work for statements made by your client. Prior to the arrest of the defendant, the police asked if there was any marijuana in the vehicle, and the defendant stated that he had just got done smoking and threw the "J" out on the freeway. If the government becomes aware of additional statements made by the defendant you will be notified in writing.

### E. Criminal Record

Please refer to the Pretrial Services Report that you received at arraignment for further information about your client's record. I will notify you in writing if the government learns of any additional convictions.

**F.    Government's Discovery Requests**

The government hereby makes a reverse discovery request pursuant to Fed. R. Crim. P. 16(b), including, but not limited to the following:

- notice of documents and tangible objects the defendant expects to introduce;

- a <u>Jencks</u> request for all prior statements of any defense witness (excluding the defendant);

- a <u>Lewis</u> request (for which we request the name, date of birth, sex, and social security number of each defense witness prior to trial); and

- a request for information pertaining to any expert or scientific testimony or evidence;

Pursuant to Fed. R. Crim. P. 16, we note our continuing request to receive any material pursuant to Rule 16(b) as the case proceeds.

**G.    Alibi Demand**

The government makes an alibi demand pursuant to Fed R. Crim. P. 12.1. In accord with Rule 12.1, the government hereby notifies you that the time, date and place of the offense are indicated on the accompanying police paperwork**.** Pursuant to Rule 12.1, in the event you intend to offer an alibi defense, please direct the appropriate notice to the assigned AUSA within ten days.

**H.    Other Information (<u>Brady</u> / <u>Lewis</u> / <u>Giglio</u>)**

The government is unaware of any <u>Brady</u> or <u>Giglio</u> information, but is aware of its continuing duty to disclose such information should it become known. Lewis information for the government's witnesses will be provided to you at the time of trial.

**III. Contact Information**

If you have any questions about the information provided above, you may contact me by telephone, fax, or mail. In particular, please note the correct zip code for the U.S. Attorney's Office.

Steven B. Wasserman
Office of the United States Attorney
Federal Major Crimes Section
Room 4241
555 Fourth Street, N.W.
Washington, D.C. 20530

Office:   202-307-0031
Fax:      202-353-9414

                      Sincerely,

                      KENNETH L. WAINSTEIN
                      United States Attorney

By:   _____
        STEVEN B. WASSERMAN
        Assistant United States Attorney

cc: District Court Case File (without attachments)