```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

**UNITED STATES OF AMERICA**      )
                                  )  No. 1:06-cr-172-EGS
    **v.**                            )
                                  )
**VINCENT E. TILLMAN**             )

Government's Opposition To Defendant's Motion To Suppress
<u>Tangible Evidence</u>

    The United States of America, by and through the United States Attorney for the District of Columbia, hereby opposes defendant Vincent E. Tillman's motion to suppress tangible evidence, on the grounds set forth herein and on such additional grounds that might be argued at a hearing on this matter.

<u>Background</u>

    Defendant Tillman has been charged in a three-count indictment with being a felon in possession of a firearm (count one), possession with intent to distribute 100 grams or more of heroin (count two), and use of a firearm during the commission of a drug trafficking offense (count three). The indictment alleges that the offenses occurred on or about March 6, 2006. The defendant has pled not guilty.

    The charges are based on the following facts. On March 6, 2006, at approximately 10:10 p.m., MPD officers made a traffic stop of a 1986 Mercury Station Wagon, after observing the driver, who was later identified as the defendant, operating the vehicle without wearing a seatbelt. The station wagon was stopped in the 1100 block of Eleventh Street, S.E., Washington, D.C.

Metropolitan Police Department Officer Chris Reisinger approached the station wagon and asked the defendant for his license and registration, which he provided.  Noticing a strong odor of marijuana emanating from the station wagon, Officer Reisinger asked the defendant if there was any marijuana in the vehicle.  The defendant replied, "I just got done smoking, and threw the J out on the freeway."  The defendant and the sole passenger, a black female person seated in the front passenger seat, were told to exit the station wagon, after which Officer Reisinger conducted a search of the vehicle.

Officer Reisinger first seized a single hand-rolled cigarette containing what was later determined to be marijuana from the driver's seat.  Subsequently, other officers recovered, from inside a panel in the rear passenger seat, (1) a black skull cap holding a loaded Smith and Wesson .40 caliber handgun and (2) several plastic bags subsequently determined to contain heroin.  In addition, $332 in U.S. currency was recovered from the purse belonging to the female passenger.

Defendant Tillman has now moved to suppress "any and all physical evidence" seized from the station wagon, and "any and all statements, admissions or confessions given by the defendant," on the grounds that the police did not have a lawful basis to stop and subsequently search defendant Tillman's vehicle, and, in addition, that any statements by him to the

police were made involuntarily and were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966).  The motion should be denied.

Argument

1. The Police Had Reasonable Articulable Suspicion To Stop The Defendant's Vehicle To Investigate A Traffic Violation.

The District of Columbia Code makes it a civil infraction to drive a motor vehicle in the District of Columbia without wearing "a properly adjusted and fastened safety belt."  D.C. Code §§ 50-1802, 50-1804, 50-1806 (2001 ed.).  It is well established that the police, consistent with the Fourth Amendment, may make a traffic stop of a vehicle when there is at least reasonable, articulable suspicion that the driver of the vehicle has committed a traffic violation, even a non-criminal violation.  See Whren v. United States, 517 U.S. 806, 809-10 (1996); Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984).  During such a traffic stop, it is permissible for the officer to order the driver and any other occupants to get out of the car. Maryland v. Wilson, 519 U.S. 408, 410-15 (1997).

In this case, Officer Reisinger stopped the defendant's car only after personally observing the defendant driving without wearing a safety belt.  Based on that observation, the traffic stop was lawful.  Once the defendant's car was stopped, Officer Reisinger could lawfully approach the car, and ask the defendant

to provide his driver's license and vehicle registration.  See D.C. Code §§ 50-1401.01(c), 50-1501.04(a)(1)(C) (2001 ed.) (as amended); 18 D.C. Mun. Regs. § 421.1 (1997).[1]  At that point, without any additional justification, Officer Reisinger could have ordered the defendant and his female passenger to exit the vehicle.  The officer was also lawfully in a position to notice the odor of marijuana coming from the defendant's vehicle.

    2.   <u>The Officer Was Not Required To Mirandize The Defendant Prior To Asking Him Whether There Was Marijuana In The Vehicle.</u>

In <u>Berkemer</u>, the Supreme Court directly addressed the question of whether the police must <u>Mirand</u>ize a driver of a motor vehicle stopped for a traffic violation, prior to questioning him (or her).  468 U.S. at 422-23.  The Court held that no <u>Miranda</u>

---

[1] The first statutory provision states, in pertinent part:

> Any individual to whom a license or permit to operate a motor vehicle has been issued shall have the license or permit in his or her immediate possession at all times while operating a motor vehicle in the District of Columbia and shall exhibit the license or permit to any police officer upon demand.

D.C. Code § 50-1401.01(c) (2001 ed.) (as amended).  The second statutory provision makes it unlawful for a person to operate a motor vehicle in the District of Columbia "[i]f such person does not have in his possession or in the motor vehicle . . . operated the registration certificate . . . required therefor." <u>Id.</u> § 50-1501.04(a)(1)(C).  The cited regulation requires the driver of a motor vehicle to display the vehicle's registration card upon demand by a police officer.  18 D.C. Mun. Regs. § 421.1 (1997).

warnings were required, because a traffic stop is more akin to a detention under Terry v. Ohio, 392 U.S. 1 (1968), and that under Terry and its progeny, a police officer may ask questions of a detained suspect without first providing such warnings.  468 U.S. at 439-40.  It is only when a temporary detention under Terry becomes a custodial arrest that Miranda warnings are required. See id. at 439-40.

Accordingly, Officer Reisinger was certainly not required to Mirandize the defendant before asking him for his license and registration, the types of questions specifically recognized by the McCarty Court as appropriate during a traffic stop.  See id. at 437.

Nor was the officer required to Mirandize the defendant when, after noticing the odor of marijuana coming from the car, he asked the defendant if there was any marijuana in the vehicle. At the time of the officer's question, the officer had done nothing to elevate the defendant's temporary detention in the traffic stop to a full custodial arrest.  Indeed, Officer Reisinger had not even ordered the defendant out of the car, which while slightly increasing the intrusion on the defendant's liberty, see Pennsylvania v. Simms, 434 U.S. 106, 111 (1977), would have still been permissible in the context of a traffic stop supported only by Terry-level suspicion.

Simply put, Officer Reisinger's detection of the odor of marijuana provided an alternative basis for the defendant's temporary detention under Terry. Specifically, Officer Reisinger now had, at the very least, reasonable, articulable suspicion that the defendant was in possession of marijuana, a crime in violation of D.C. and federal law. See 21 U.S.C. § 802(6), 812(c), Schedule I (c)(10), 844(a); D.C. Code § 901.02(4), 902.08(a)(6), 904.01(d) (2001 ed.) (as amended). Thus, the officer was permitted to investigate whether the defendant was in possession of marijuana, including by asking him "a moderate number of questions," without the benefit of Miranda warnings, in order to "obtain information confirming or dispelling the officer's suspicions." McCarty, 468 U.S. at 439-40; see also United States v. Jackson, 280 F.3d 403, 405 (4th Cir. 2002) (holding that "strong odor of marijuana" detected during traffic stop justified brief investigatory stop and allowed officer to ask driver whether he had any drugs in the vehicle).

3. The Smell Of Marijuana Emanating From The Vehicle Gave The Officer Probable Cause Both To Search The Passenger Compartment Of The Defendant's Vehicle, And To Arrest The Defendant And Search The Passenger Compartment Incident To Arrest.

It is well established that the police may search a vehicle, without a warrant, if there is probable cause to believe the vehicle contains contraband. Carroll v. United States, 267 U.S. 132, 149-53 (1925). It is similarly well established that if the

police have probable cause to arrest a person, they may search his person and areas within his immediate control, without further justification and without obtaining a warrant, United States v. Robinson, 414 U.S. 218, 235 (1973); United States v. Taylor, 302 U.S. App. D.C. 349, 351, 997 F.2d 1551, 1553 (1993) (citing United States v. Watson, 423 U.S. 411, 416-19 (1976)), and that the area within the immediate control of an arrestee includes the passenger compartment of an automobile the arrestee happens to be in, and any containers within the passenger compartment, New York v. Belton, 453 U.S. 454, 457-63 & n. 4 (1981).[2]

Whether the police have probable cause to make an arrest or search is determined from the totality of the circumstances. Maryland v. Pringle, 540 U.S. 366, 371 (2003); Illinois v. Gates, 462 U.S. 213, 230-38 (1983); Taylor, 302 U.S. App. D.C. at 351, 997 F.2d at 1553.

---

[2] It is immaterial if, as in this case, the police search the passenger compartment after removing the arrestee from the automobile. That was precisely what how the search of the automobile in Belton was conducted. 453 U.S. at 456; see also Thornton v. United States, 541 U.S. 615, 617-24 (2004) (holding that search of an automobile's passenger compartment incident to arrest can include situations where arrestee has exited automobile prior to police initiating contact).

It is similarly irrelevant if the search precedes the formality of officially placing a temporarily detained person under arrest. See Rawlings v. Kentucky, 448 U.S. 98, 110-11 (1980).

The government submits that, alone, the officer's detection of marijuana odor from the vehicle provided probable cause both to arrest the defendant and to search the passenger compartment of the defendant's car.  The probable cause was then bolstered when the defendant acknowledged that he had recently been in possession of marijuana while driving the car.

The case of <u>United States v. Staula</u>, 80 F.3d 596 (1st Cir. 1996), is instructive.  In <u>Staula</u>, a police officer stopped a pickup truck for violations of the state motor vehicle code.  <u>Id.</u> at 599.  When the officer approached the truck to demand the driver's registration and license, "he smelled the odor of burnt marijuana."  <u>Id.</u>  In response to the officer's queries, both the pickup truck driver and the single passenger denied they had been smoking marijuana and denied they had any marijuana in the truck, although the passenger volunteered that she "recently had burned incense in the vehicle." <u>Id.</u> at 599-600.  The police subsequently searched the truck and immediately found two bags of marijuana behind the passenger seat; in a subsequent, more thorough search, the police recovered a loaded handgun and a box of ammunition, also from behind the passenger seat.  <u>Id.</u> at 600.

The Court of Appeals for the First Circuit upheld the search of the truck.  <u>Id.</u> at 602-03.  The court held that "when a law enforcement officer detects the odor of marijuana coming from a confined area, such as the passenger compartment of a motor

vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area." Id. at 602; accord United States v. Parker, 72 F.3d 1444, 1450 (10th Cir. 1995) ("If an officer smells marijuana in the passenger compartment of a vehicle, he has probable cause to search the passenger compartment."); see also United States v. Johns, 469 U.S. 478, 482 (1985) ("After the officers came closer [to the pickup trucks] and detected the distinct odor of marihuana, they had probable cause to believe that the vehicles contained contraband.").

Accordingly, the search of the passenger compartment of the defendant's vehicle, including containers such as his female passenger's purse, is supportable both as a lawful search incident to a warrantless arrest of the defendant, and a lawful warrantless search of the vehicle.[3]

## Conclusion

Defendant's motion should be denied. A proposed order is attached.

---

[3] In the event the Court determines that the enclosed area behind the panel of the passenger seat was not part of the "passenger compartment," the search of the area behind the panel was justified, as a search of the entire car, once Officer Reisinger found the marijuana cigarette on the driver's seat. See United States v. Turner, 326 U.S. App. D.C. 219, 221, 119 F.3d 18, 20 (1997) (holding that once an officer lawfully observed marijuana in the passenger compartment of the defendant's vehicle, the officer had probable cause to search the trunk for additional marijuana).

      Respectfully submitted,

      KENNETH L. WAINSTEIN
      United States Attorney


by: _____
    Michael C. Liebman
    Assistant United States Attorney
    D.C. Bar No. 479562
    555 Fourth Street, N.W., room 4231
    Washington, D.C.  20530
    353-2385
    michael.liebman@usdoj.gov