# E X H I B I T   A

P R O C E E D I N G S

1

2          THE COURT:  Criminal Number 06-172, United States

3     versus Vincent Tillman.

4          Would counsel please identify yourselves for the

5     record.

6          MR. MOORE:  May it please the Court.  Shawn Moore

7     standing in for Tony Axam on behalf of Mr. Vincent Tillman.

8          MR. WASSERMAN:  Good morning, Your Honor.  Steven

9     Wasserman on behalf of the United States.

10         THE COURT:  Good morning, counsel.

11         Mr. Tillman, good morning.

12         MR. MOORE:  Mr. Tillman is, indeed, here.  We thought

13    that he hadn't gotten notice, but he is, indeed, here.

14         THE COURT:  Has he been interviewed by pretrial?  I

15    don't have a report, I don't think.  Is this his initial

16    appearance?  Has he appeared before a magistrate judge before?

17         MR. MOORE:  It appears that it should be a Grand Jury

18    original.  I assume this is his first appearance.

19         THE COURT:  He's going to have to be interviewed by

20    pretrial then before we can proceed.

21         (Discussion held off the record.)

22         THE COURT:  And he was informed to do this before

23    today.  He did receive notice.  The reason he's here is because

24    he received notice and it said to go to pretrial.

25         I can pass it.  I mean, I'll be here all day.

1           Did you go to pretrial?

2           MR. MOORE:  He indicates that he went to pretrial.

3           THE DEFENDANT:  I did this morning.

4           THE COURT:  And did you answer a lot of questions?

5           THE DEFENDANT:  No, sir.  She checked me in and sent

6   me upstairs.

7           THE COURT:  Have you ever been interviewed by someone

8   at pretrial who asked you where you live, where you work, do

9   you have family?

10          THE DEFENDANT:  Yes.

11          THE COURT:  When did that take place?

12          THE DEFENDANT:  That was in Superior Court.

13          MR. MOORE:  He was interviewed --

14          I think this started out in Superior Court.  And

15  there appears to be some information.  There was an interview

16  in Superior Court, a standard Superior Court interview with

17  him.  But it appears the case was then brought over here.

18          THE COURT:  How long ago was that interview, do you

19  know?  If you have a copy of the report, we can use your copy.

20          MR. MOORE:  I'll see if I can find it, Judge.

21          THE COURT:  If not, he'll have to be interviewed.

22          I don't have a lot of other matters this morning, so

23  we have some time available.

24          Mr. Wasserman, I'll ask you, do you have anything in

25  your files?

1          MR. WASSERMAN:  The Court's indulgence.

2          THE COURT:  I assume some judge released him in

3    Superior Court.

4          MR. WASSERMAN:  Your Honor, that case actually was

5    dismissed in Superior Court as a result of the officer failing

6    to show up for the preliminary hearing, so I believe that's how

7    the case resolved itself over there.

8          THE COURT:  Do we have a pretrial representative

9    here?

10         THE CLERK:  I called down there and he can go down

11   there.

12         THE COURT:  He has to go down to be interviewed?

13         All right.  He's got to be interviewed.

14         If you would like to get a cup of coffee or

15   something, that's fine with me.  I don't know how long it will

16   take.

17         THE CLERK:  I told them as soon as possible.

18         THE COURT:  I've got to leave here.  I've got to be

19   at a law firm to do something for a bar association at 11:30.

20         MR. MOORE:  So should he go down to --

21         THE COURT:  You might want to go down with him and

22   see if you can speed it up, counsel.

23         MR. MOORE:  Okay.  I'll take him down there.  I've

24   got one more matter, I've got the Levon Lee matter in front of

25   the Court.

1          THE COURT:  Is he here?

2          MR. MOORE:  He's locked up.

3          He can go down there.

4          THE CLERK:  They're waiting for him.

5          (Discussion held off the record.)

6          THE COURT:  Would you like to come back, counsel?

7          MR. WASSERMAN:  That's fine.  Do we have a particular

8    time?

9          THE COURT:  Let's make it 11:00.

10          (Recess taken.)

11          THE CLERK:  Resuming Criminal Case 06-172, United

12    States versus Vincent Tillman.

13          Would counsel please identify yourselves for the

14    record.

15          MR. WASSERMAN:  Good afternoon, Your Honor.  Steven

16    Wasserman on behalf of the United States.

17          MR. AXAM:  Good afternoon, Your Honor.  Tony Axam on

18    behalf of Mr. Tillman.

19          THE COURT:  All right.  I assume you have a copy of

20    the report, is that correct?

21          MR. AXAM:  I do.

22          THE COURT:  Mr. Wasserman?

23          MR. WASSERMAN:  Yes.

24          THE COURT:  There are more questions than answers

25    here.

1          we have the probation officer on the phone,

2    Mr. Burgess.

3          All right.  This is Judge Sullivan.  I have a couple

4    of questions about Mr. Tillman.

5          Are you the supervising probation officer?

6          MR. BURGESS:  I am not.  As I told the clerk, I am

7    just merely an interstate compact technician.  My duties are to

8    monitor his case once it leaves this state.  And I believe he's

9    in Maryland, right, he resides in Maryland?

10         THE COURT:  No, I'm sorry.  I'm a judge at the U.S.

11    District Court in Washington, D.C.

12         MR. BURGESS:  Okay.  And what are your questions,

13    because, as I told your clerk, I definitely may have to have my

14    supervisor answer your questions?

15         THE COURT:  Well, apparently he's on probation, I

16    assume.  And we were just trying to get some information

17    regarding his current status, whether he's been in compliance,

18    anything that you can provide us with, because he's before the

19    Court for arraignment in a felony case.

20         MR. BURGESS:  Let me put you on speaker phone.  I

21    have my supervisor here.  We'll be able to help you as soon as

22    we get our system up, okay?

23         THE COURT:  Sure.

24         MR. AGUBOKWU:  Good afternoon, Your Honor.

25         THE COURT:  Hello.

1        MR. AGUBOKWU:  How are you, sir?

2        THE COURT:  Fine.  And your name?

3        MR. AGUBOKWU:  Vincent Agubokwu.

4        THE COURT:  Okay.  You'll have to spell that, please.

5        MR. AGUBOKWU:  Okay.  First name Vincent.  Last name

6  is Agubokwu, A-G-U-B-O-K-W-U.

7        THE COURT:  All right.  And you're Mr. Tillman's

8  probation officer, correct?

9        MR. AGUBOKWU:  I'm the supervisor.  The case is on

10  monitor status, but I'm the supervisor in this case.

11        THE COURT:  My question is whether or not you're Mr.

12  Tillman's probation officer?

13        MR. AGUBOKWU:  Ms. Nickelberry is the probation

14  officer, Sharon Nickelberry.

15        Do you want me to spell the name?

16        THE COURT:  The name we have is Vincent Edward

17  Tillman.

18        MR. AGUBOKWU:  Yes, that's the offender's name, yes.

19        THE COURT:  All right.  He's before the Court for

20  arraignment in a very serious offense.  We're just trying to

21  get some information about him.

22        MR. AGUBOKWU:  Your Honor, Vincent Tillman is the

23  offender and the officer is Sharon Nickelberry, S-H-A-R-O-N,

24  N-I-C-K-E-L-B-E-R-R-Y.

25        THE COURT:  All right.  That's Nickelberry?

1    MR. AGUBOKWU:  Yes, Your Honor.

2    THE COURT:  What's her phone number.

3    MR. AGUBOKWU:  Her phone number (202)442-1416.

4    THE COURT:  Is she available?

5    MR. AGUBOKWU:  No, she's not available, Your Honor.

6    THE COURT:  Does she have a supervisor?

7    MR. AGUBOKWU:  Yes.  I'm her supervisor.

8    THE COURT:  You're her supervisor?

9    MR. AGUBOKWU:  Yes, Your Honor.

10    THE COURT:  And what's your name?

11    MR. AGUBOKWU:  This is Vincent Agubokwu.

12    THE COURT:  Oh, okay.

13    MR. AGUBOKWU:  My name is Vincent too.  Maybe that's

14    what is confusing.  My name is Vincent and the offender's name

15    is Vincent.

16    THE COURT:  I see.

17    All right.  Sir, what can you tell us about

18    Mr. Tillman?

19    MR. AGUBOKWU:  The case was initially assigned to us

20    here on January 14, 2003 and the case was transferred to

21    Maryland.

22    THE COURT:  Probation was transferred to Maryland?

23    MR. AGUBOKWU:  Maryland, yes, on February 13, 2003.

24    The case has been on monitor status.

25    THE COURT:  I'm sorry, the case has been --

1           MR. AGUBOKWU: The case has been on monitor status,

2   monitor. That means Maryland has the case, but we just monitor

3   it through. It has been on monitor status since the transfer.

4           THE COURT: All right. He's being supervised in

5   Maryland, is that right?

6           MR. AGUBOKWU: Yes, in Maryland.

7           THE COURT: And you're just monitoring that, is that

8   right?

9           MR. AGUBOKWU: Yes, we're monitoring the case. Since

10   the Maryland transfer there has been an arrest. There was an

11   arrest on 3-6-06.

12           THE COURT: That was his Superior Court charge,

13   right?

14           MR. AGUBOKWU: Yes. Cocaine.

15           THE COURT: Tell me about his compliance on

16   probation, if you can.

17           Is there a phone number for a Maryland probation

18   officer we can call?

19           MR. AGUBOKWU: Yes. Hold on, Your Honor.

20           (443)263-3630.

21           THE COURT: And what's her name, Ms. Nickelberry?

22           MR. AGUBOKWU: No. The name of the Maryland

23   probation officer is Krystal Jones. Krystal, K-R-Y-S-T-A-L.

24   Jones is the last name, J-O-N-E-S.

25           THE COURT: All right. And she's the Maryland

1    probation officer?

2            MR. AGUBOKWU:  Yes.  And the phone number is

3    (443)263-3630.

4            THE COURT:  Is she available, do you know?

5            MR. AGUBOKWU:  That's Maryland.  This is in Maryland.

6    I don't know whether she's available.

7            THE COURT:  Let me ask you this.

8            You're monitoring the probation in Maryland, right?

9            MR. AGUBOKWU:  Yes, we're monitoring the probation.

10           THE COURT:  Can you tell me from your point of view,

11   is he in compliance, Mr. Tillman?

12           MR. AGUBOKWU:  I would say that this offender,

13   because of the multiple arrests that I see here, this offender

14   is, because of the arrests, I wouldn't say that he's in

15   compliance.

16           THE COURT:  You say multiple arrests?

17           MR. AGUBOKWU:  Okay.  I'm sorry.  I'm looking at the

18   officer's entry and there's only one arrest.

19           THE COURT:  Only one arrest?

20           MR. AGUBOKWU:  Yes, only one arrest.

21           THE COURT:  Not multiple arrests?

22           MR. AGUBOKWU:  Not multiple.  I'm sorry about that,

23   because I just saw three entries from different people for the

24   same arrest.

25           THE COURT:  Since you're monitoring the probation,

1    can you tell me about his compliance, since you're keeping up

2    with it?

3          MR. AGUBOKWU:  Hold on, Your Honor.  I'm going to

4    tell you, because the compliance comes from Maryland, the

5    Maryland progress report.

6          THE COURT:  Do you have the most recent progress

7    report?

8          MR. AGUBOKWU:  Okay.  In January, the last report we

9    got from them said the offender was doing well.

10         THE COURT:  In January?

11         MR. AGUBOKWU:  Yes, sir.

12         THE COURT:  That was five months ago.  What's he been

13   doing since then?

14         MR. AGUBOKWU:  Since five months ago, we have not

15   received any negative report until this arrest.

16         THE COURT:  Has anyone picked the phone up to inquire

17   about what's going on?

18         MR. AGUBOKWU:  Your Honor, the progress report is

19   sent to us annually.

20         THE COURT:  I'm sorry, the progress report is sent to

21   you?

22         MR. AGUBOKWU:  Yes.  Once a year.

23         THE COURT:  Once a year?

24         MR. AGUBOKWU:  Yes.  But if anything is wrong, then

25   they can send us the information.  That's why they sent us the

1    information about the arrest.  So despite the arrest the

2    defendant was doing well.

3              THE COURT:  All right.

4              MR. AGUBOKWU:  Yes, Your Honor.

5              THE COURT:  But you don't know what he's been doing

6    since?  Well, we know he picked up a criminal charge, but you

7    don't know what else he's been doing.  And even though he

8    picked up a criminal charge, you weren't aware of it?

9              MR. AGUBOKWU:  We are aware of the criminal charge.

10   They sent us a report.  We are.  And my staff has sent the

11   report to the court because of the arrest.  We are aware of the

12   arrest, Your Honor.

13             THE COURT:  When did you become aware of it?

14             MR. AGUBOKWU:  We received the information on

15   3-23-2006 via e-mail.

16             THE COURT:  Have you recommended any action insofar

17   as the current probation is concerned?

18             MR. AGUBOKWU:  I have to look.  Hold on, Your Honor.

19             THE COURT:  All right.

20             MR. AGUBOKWU:  Your Honor, based on the charge, my

21   staff wrote the report to the Court.  This report was written

22   on 4-19-2006.  And according to a summary recommendation she

23   said, according to a progress report provided by Maryland this

24   offender has been in compliance with the conditions of his

25   probation.  In light of the fact that this matter has been

1    dismissed no action is requested at this time.

2                THE COURT:  So the rearrest for this charge doesn't

3    trigger any other action?

4                MR. AGUBOKWU:  According to this report, this matter

5    was dismissed based on what I'm reading here.  According to

6    this report the offender was doing well until this arrest.  For

7    the fact that the arrest was dismissed we recommended no

8    action.

9                THE COURT:  All right.  What's your recommendation as

10   of today?  He's charged with a felon in possession of a

11   firearm.

12               MR. AGUBOKWU:  Okay.  So this is a new charge, Your

13   Honor?  Your Honor, apart from this charge, we are not aware of

14   a new current charge as of the last time we wrote this report.

15               THE COURT:  All right.  Well, I'm telling you what

16   the new charge is.  He was just indicted on two charges, two

17   counts, possession of a firearm by a convicted felon and

18   carrying and possessing a firearm during a drug trafficking

19   offense.

20               MR. AGUBOKWU:  Okay.  We definitely recommend

21   revocation of probation.

22               THE COURT:  I'm sorry, you recommend what?

23               MR. AGUBOKWU:  We recommend revocation of probation.

24               THE COURT:  Revocation?

25               MR. AGUBOKWU:  Yes.

1      THE COURT:  All right.  You recommend that he be

2  detained?

3      MR. AGUBOKWU:  Yes, definitely.

4      THE COURT:  Why?

5      MR. AGUBOKWU:  Well, because of the nature of the

6  charge and because this offender is developing a pattern of

7  arrest.  You know, the previous one was discharged.  Because of

8  the nature of this particular charge you are telling me I

9  strongly believe that this offender should be stepped back.

10     THE COURT:  All right.  Thank you.

11     Let me keep you on the phone for a few minutes.

12     Any questions of the probation officer?

13     MR. WASSERMAN:  Your Honor, just to clarify, the

14 defendant was arrested on the instant charge that he's been

15 indicted on in March.

16     THE COURT:  That's what I thought.

17     MR. WASSERMAN:  That was originally in Superior

18 Court.  It was dismissed as a result of problems with the

19 preliminary hearing and getting officers there and now it went

20 to the District Court.  I'm not sure if the probation officer

21 is aware of that.

22     I don't have any questions.

23     THE COURT:  All right.  Originally these charges were

24 brought in Superior Court, but then they were dismissed and

25 rebrought in Federal Court.

1          MR. AGUBOKWU:  Okay.

2          THE COURT:  And they're currently before me today.

3    He was just indicted a few days ago or so, a week or so ago.

4          MR. AGUBOKWU:  Yes.

5          THE COURT:  All right?

6          MR. AGUBOKWU:  Yes.

7          THE COURT:  So what's your recommendation?

8          MR. AGUBOKWU:  Well, I still maintain that because of

9    this new information, if he was indicted in the previous

10   charge, we would recommend offender to be stepped back because

11   of the nature of the charge.

12         THE COURT:  All right.  And you're with CSOSA?

13         MR. AGUBOKWU:  I'm with CSOSA, I'm the supervisor

14   here.

15         THE COURT:  All right.  Mr. Axam, any questions you

16   have of the probation officer?

17         MR. AXAM:  No, Your Honor.

18         THE COURT:  All right.  Mr. Agubokwu, thank you very

19   much.

20         MR. AGUBOKWU:  If you don't mind, I want to get your

21   correct name.

22         THE COURT:  My correct name?  Let me spell it for

23   you.  S-U-L-L-I-V-A-N.  And that's Emmet, E-M-M-E-T.  All

24   right?

25         MR. AGUBOKWU:  Okay.

1          THE COURT:  And the courtroom number here is

2   354-3170.

3          MR. AGUBOKWU:  Is this Superior Court or District

4   Court?

5          THE COURT:  That's District Court.  The room is 24 in

6   the annex.

7          MR. AGUBOKWU:  Thank you so much.

8          THE COURT:  What's your direct dial number?

9          MR. AGUBOKWU:  (202)442-1412.

10          THE COURT:  And you're monitoring the probation

11   that's been transferred to Ms. Jones in Maryland, correct?

12          MR. AGUBOKWU:  Yes, we are monitoring this probation

13   that transferred to Maryland.

14          THE COURT:  All right.  Thank you, Mr. Agubokwu.

15          MR. WILSON:  Your Honor, before Mr. Agubokwu hangs

16   up, this is pretrial services, Vaughn Wilson, I would like to

17   know if he's going to be requesting a violation warrant for the

18   defendant?

19          MR. AGUBOKWU:  Yes.

20          THE COURT:  He says yes.

21          MR. WILSON:  Right now the defendant was eligible for

22   heightened supervision, but if the warrant is coming down the

23   pike, he will no longer be eligible for our program.

24          MR. AGUBOKWU:  Yes, definitely.  On the pretrial can

25   you send us the arrest report, please?

1    MR. WILSON:  I can fax you a report, a Pretrial

2    Services report.  There isn't an arrest report, since this is

3    an indictment from the previous charge.

4        MR. AGUBOKWU:  Okay.  Good.  Because we probably have

5    to do an addendum from the previous report.

6        MR. WILSON:  That's fine.

7        MR. AGUBOKWU:  What is your name?

8        MR. WILSON:  V, as in Victor, A-U-G-H-N.  Last name

9    is Wilson, W-I-L-S-O-N.

10       MR. AGUBOKWU:  Wilson.  Thank you so much.  Okay.

11   Bye.

12       THE COURT:  Wait just a minute.

13       MR. AXAM:  Mr. Agubokwu, this is Tony Axam, Mr.

14   Tillman's lawyer.

15       Did you request revocation in March when Mr. Tillman

16   was arrested?

17       MR. AGUBOKWU:  No, because the case was dismissed

18   based on information we had at the time.

19       THE COURT:  The case was dismissed.  That's what

20   happened, it was dismissed and rebrought over here.

21       MR. AGUBOKWU:  Yes.

22       THE COURT:  All right.  Do you need any more

23   information from us?

24       MR. AGUBOKWU:  No, no information.  Like I said, if I

25   receive something from pretrial, we'll have to send an update

1    to the Court.

2              THE COURT:  The pretrial officer will fax you a copy.

3         MR. WILSON:  Yes, Your Honor.

4              THE COURT:  All right.  Mr. Agubokwu, thank you.

5         MR. AGUBOKWU:  Thank you.

6              THE COURT:  Do you have any questions you want to ask

7    me?

8         MR. AGUBOKWU:  No.

9              THE COURT:  All right, sir.  Thank you.

10        None of this information has been verified either,

11   which also is a concern.

12             Mr. Axam, I'm inclined to hold the defendant without

13   bond.  I'll hear from you, of course.

14             MR. AXAM:  Your Honor, I actually was able to speak

15   with my client's step-father at the home that he lives with his

16   mother and he was able to confirm information.  I did give that

17   phone number to Pretrial Services.  And I believe that they

18   were able to confirm the information as well.

19             THE COURT:  Can I stop you for a second?

20        What's the government's proffer with respect to the

21   circumstances surrounding this event?

22             MR. WASSERMAN:  I'm happy to answer that.  I don't

23   know whether he's been formally arraigned as of yet.

24             THE COURT:  No, he hasn't.

25        I guess we might as well do that, Carol.  He's here

1    for arraignment. That's what he came in for first thing this

2    morning.

3           Mr. Tillman, why don't you join your attorney at the

4    microphone. We'll formally arraign you.

5           THE CLERK: May the record reflect that the defendant

6    has received a copy of the superseding indictment. Does the

7    defendant waive formal reading of the superseding indictment?

8           MR. AXAM: On behalf of Mr. Tillman I waive formal

9    reading of the superseding indictment, enter a plea of not

10    guilty to each count in the superseding indictment and assert

11    his Fourth, Fifth and Sixth Amendment rights, specifically his

12    right to a speedy jury trial.

13           THE COURT: Obviously, you're arguing for personal

14    bond. I just need to know something more about the charges.

15    This is a Grand Jury original. I know nothing about the case,

16    so I would just ask the prosecutor to state what the --

17           MR. WASSERMAN: Yes, Your Honor.

18           On March 6 of 2006, the defendant was driving a

19    vehicle. A traffic stop was conducted during which the officer

20    smelled marijuana coming from the vehicle. The defendant was

21    asked about the marijuana and indicated that he had just

22    finished smoking marijuana.

23           At that point, the defendant was removed from the

24    vehicle and placed under arrest. The officers found a burnt

25    marijuana cigarette in the vehicle. A further search of the

1  vehicle revealed in the rear passenger's seat on the driver's

2  side, it was actually loose and lifted up the actual seat, and

3  found a hat which contained over a hundred grams of heroin and

4  a loaded firearm.

5      The vehicle was registered in the defendant's name.

6  He was traveling with a female in the front passenger's seat at

7  the time.  I believe she may have had about $332 in currency in

8  her purse.

9      That's essentially the facts.

10     THE COURT:  That's fine.  I assume you're arguing for

11  step-back?

12     MR. WASSERMAN:  Yes, Your Honor.

13     THE COURT:  All right.  Mr. Axam.

14     MR. AXAM:  Your Honor, we're certainly arguing for

15  something less restrictive than incarceration.  As I told the

16  Court, I was able to confirm information contained in the

17  Pretrial Services report.  And specifically I was able to

18  confirm that Mr. Tillman has been employed.  He was employed by

19  the Department of Public Works for the past four years.  And

20  recently got a better job and is in training to become a

21  transit operator with M. V. Transportation Company.

22     What I would say about his probation is aside from

23  this arrest it does not sound like he has had any violation on

24  probation.  If I understood Mr. Agubokwu correctly, while they

25  receive a once a year progress report, they only receive

1    notices from Maryland when there is actually something wrong.

2    Mr. Agubokwu indicated that he was going to ask for a hearing

3    on this matter in the Superior Court, but when Mr. Tillman was

4    originally arrested it does not appear as though he asked for a

5    hearing.

6            THE COURT:  So is he estopped now from filing a

7    warrant?

8            MR. AXAM:  No, I don't think that he's estopped from

9    doing it.  The probation office is certainly allowed to do so

10   upon an arrest.  Frankly, nothing has changed except he's not

11   charged in Superior Court.

12           THE COURT:  He's been indicted.  He wasn't indicted

13   in Superior Court, I don't think, was he?

14           MR. AXAM:  That is correct.

15           THE COURT:  Charges were brought and for whatever

16   reason the government decided to bring it over here and that's

17   why they didn't proceed any further.

18           All right.  I'm going to detain him without bond.

19   You can pick a status hearing date if you want to.

20           What's the speedy trial date?

21           THE CLERK:  September 5.

22           THE COURT:  Any objections to that calculation?

23           MR. WASSERMAN:  I assume it's 90 days from yesterday,

24   the calculation?

25           THE CLERK:  Seventy days from today.

1          MR. WASSERMAN:  Okay.  Very well.

2          MR. AXAM:  I don't have any dispute with that.

3          THE COURT:  All right.  If you want me to continue

4    the case for a status hearing to enable you to get discovery,

5    I'll be happy to do so.

6          How would you like to proceed?

7          MR. WASSERMAN:  Your Honor, for the record, I

8    provided discovery to Mr. Axam prior to this hearing.

9          THE COURT:  Mr. Axam, how would you like to proceed?

10          MR. AXAM:  Your Honor, I would request a status date

11    July 12, if we could appear then.

12          THE COURT:  I have that AT&T hearing, is that right,

13    on the 12th?

14          THE CLERK:  Yes.

15          THE COURT:  I can do it.  It's going to be late in

16    the day, though, counsel.

17          What time does that hearing start, at 9:00?

18          THE CLERK:  9:00.

19          THE COURT:  I'm just juggling some things.  I can do

20    it that day, but it's going to have to be -- I have a hearing

21    that has to start at 9:00, so it's going to be late in the day

22    or either the following week.

23          MR. AXAM:  I can do it late in the day, Your Honor.

24          THE COURT:  Then it will be 4:30 on the 12th.

25          MR. WASSERMAN:  That's fine, Your Honor.

1    THE COURT:  All right.  I'll sign an order

2    transferring your client to CTF if he wants to go there.

3        MR. AXAM:  Yes, please.

4        THE COURT:  I'm holding him because, obviously, he's

5    on probation and the probation officer has asked for detention.

6    He was on probation for a very serious offense.  He's got a lot

7    of back-up time.  So there is the risk of flight there.  He has

8    ten years or so back-up time there, I believe.  The sentence

9    was 108 months, I think.

10        MR. AXAM:  Your Honor --

11        THE COURT:  All but 99 -- strike that.  It's 99

12    months suspended.  So he's facing a lot of time there and he's

13    facing a lot of time here if he's convicted on this offense.

14        MR. AXAM:  Mr. Tillman is not somebody who is running

15    from this case.  As the Court is aware --

16        THE COURT:  He turned himself in today, I understand

17    that.  He's on probation for a very serious offense, though.

18    Why should the Court release him?

19        MR. AXAM:  Well, as I stated before, it's certainly

20    correct that he's on probation.  But from all indications he's

21    doing fine on probation.

22        THE COURT:  Well, we know he was doing fine as of

23    January.  I don't understand what's going on over there at

24    CSOSA, if anything.  The last report it sounds like the

25    monitoring officer received was in January.  And apparently

1    they don't pick the phone up each month to find out how people

2    are doing.  Maybe he was doing all right as of January, but

3    he's picked up a new offense as of March and he's been indicted

4    so the landscape has changed a little bit.

5            MR. AXAM:  I realize that, Your Honor.  And the only

6    thing that I can ever say to an indictment is that Mr. Tillman

7    is presumed innocent.

8            THE COURT:  Absolutely.

9            MR. AXAM:  When you look at the other factors that

10    are available for the Court to consider, the fact that he has

11    been working.  Certainly since that offense his probation in

12    that matter, as the Court said, it's a serious matter, but his

13    probation is scheduled to expire next year.  There's no

14    indication that he's been revoked or had any other -- I

15    understand that CSOSA can't tell us specifically, but I'm sure

16    that they would know if he had been revoked.

17            THE COURT:  I'm not so sure about that.  I'm not so

18    sure what's going on over there, if anything.

19            MR. AXAM:  Well --

20            THE COURT:  My understanding was they receive a

21    progress report once a year or something like that.  That's

22    what it sounded like Mr. Agubokwu was saying.

23            MR. AXAM:  What I would ask the Court to do --

24            THE COURT:  I'm sure if the judges learn that nothing

25    is being done, they'll stop transferring those cases for

1     supervision, that's for sure.

2            MR. AXAM:  I accept all those concerns, Your Honor.

3     But I would ask the Court not to draw the most negative

4     inference that my client has not been doing what's been

5     requested of him, but to draw the opposite.

6            THE COURT:  Well, we don't know what's been going on

7     since January.  The D.C. probation officer assigned to monitor

8     doesn't monitor and fell asleep at the switch.  He can't tell

9     me anything, other than the charges were brought in March and

10    they were dismissed and they didn't request any action and he

11    found out about this today and he's requesting step-back, which

12    I think is reasonable since he's on probation.

13            I invite you to file a bond review motion, counsel,

14    and I'll be happy to take it up on the 12th.

15            MR. AXAM:  Very well.

16            THE COURT:  All right.  The parties are excused.

17    You'll have to go with the marshal, sir.  The parties are

18    excused.

19            (The hearing concluded at 3:45 p.m.)

20

21

22

23

24

25